IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UMBLESTER VARGAS RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); RYAN ARBON, Weber County Sheriff; DAVID VENTURELLA, Acting Director of ICE; MARKWAYNE MULLIN, Secretary United States Department of Homeland Security; and TODD BLANCHE, United States Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR HABEAS CORPUS**<br><br>Case No. 1:26-cv-00132-JNP<br><br>Chief District Judge Jill N. Parrish |

On August 13, 2026, Petitioner Umblester Vargas Rodriguez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 1. For the following reasons, the court GRANTS the petition for habeas corpus.

**BACKGROUND**

Petitioner is a native and citizen of Mexico. He and his family sought asylum in the United States in 2024. ECF No. 1 at 3. Specifically, Petitioner entered the United States pursuant to a temporary grant of parole after scheduling an appointment at a port of entry along the southwest border on December 30, 2024 through the CBP One Mobile Application. ECF No. 1-1 (December 30, 2024 Notice to Appear). The parole was pursuant to 8 U.S.C. § 1182(d)(5) and had an expiration date of December 29, 2026. *Id.* at 5. Based on the government's records, his parole

status appears to have been terminated early on April 24, 2026. *See* ECF No. 11-2 (I-94 search record). He continues to have a pending asylum application. *See* ECF No. 1-2 (Asylum Application).

On August 10, 2026, Petitioner was convicted of driving under the influence, a misdemeanor. *See* ECF No. 1-3 (summary of state proceedings). He was sentenced to a term of 120 days, with 118 days of the sentence being suspended. *Id.* He was then apprehended by U.S. Immigration and Customs Enforcement ("ICE") based on charges of removability. *See* ECF No. 11-1 (I-213 Record of Deportable/Inadmissible Alien).

On August 13, 2026, counsel for Petitioner filed the instant petition for habeas corpus. On August 14, the court ordered Respondents to show cause as to why the petition should not be granted. ECF No. 6. Respondents filed their response on August 18, and the court held a hearing on the petition on August 19, 2026. ECF No. 11.

**LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of

proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.”).

## ANALYSIS

Petitioner initially argued that the issue in front of the court is “not *whether* Mr. Vargas can receive a bond hearing but *when*, and whether the eventual bond hearing will be constitutionally adequate after inevitable delays.” ECF No. 1 at 1–2 (emphasis in original). He argued that he appeared to be detained under 8 U.S.C. § 1226(a), though he also asserted that a warrant was not issued as required. *Id.* at 10. He accordingly argued that he should be immediately released on his own recognizance and that Respondents should not be able to re-detain him without first providing notice and a chance to respond.[1] *Id.* at 26.

In their response, Respondents disagreed with the premise of Petitioner’s claims. They argue Petitioner is actually subject to mandatory detention under 8 U.S.C. 1225(b)(2)(A), “consistent with the Immigration and Nationality Act’s requirement that former parolees be restored to the custody from which they were paroled.” ECF No. 11 at 3. They also raised a “jurisdiction” argument. *Id.* at 2.

Responding to these arguments, Petitioner argues that the termination of his parole was improper, that mandatory detention does not apply to former parolees based on the INA, and that even if it did, the Due Process clause would require a pre-deprivation hearing. *See* ECF No. 13.

### I. Venue and Personal Jurisdiction

Respondents first argue that “jurisdiction” may not be proper. They note that at 11:37 p.m. on August 13, a plane carrying Petitioner departed en route to California. *Id.* at 2. Respondents

[1] Because the court grants Petitioner immediate release, the court need not address Petitioner’s additional claims concerning Respondents’ transfer power and the adequacy of a future custody-redetermination hearing. *See* ECF No. 1 at 17, 18.

argue that if the petition was filed after that time, the petition should have been filed in the Eastern District of California because the receiving Field Office for Enforcement and Removal Operations in Fresno assumed custody over Petitioner once the wheels of the plane were up. *Id.* But Respondents concede that if the petition was filed before 11:37 p.m., jurisdiction properly lies with this court. Ultimately, Respondents argue that both the named respondents and the district of filing may be improper.

As a preliminary matter, the court first clarifies that this argument is not just one of jurisdiction, as Respondents allege, but rather also one of venue. *See Reyes Vasquez v. Noem*, 828 F. Supp. 3d 1272, 1278–79 (D. Utah 2026).

"Within the habeas context, the so-called 'immediate custodian rule' is often viewed as a matter of personal jurisdiction. The rule states that 'the proper respondent' of a habeas petition 'is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.'" *Id.* (citations omitted). In contrast, "[v]enue is defined as the appropriate district court in which to file an action." *Id.* (citation omitted). "Within the habeas context, the so-called 'district of confinement' rule is often viewed as a matter of venue. The rule states that a writ of habeas corpus is 'issuable only in the district of confinement.'" *Id.* (citations omitted).

By questioning both whether the named respondents and the district of filing are correct, Respondents raise both personal jurisdiction and venue arguments. In any case, the court is satisfied that both personal jurisdiction and venue are proper here. Court records show that the habeas petition was filed at 11:20 p.m. on August 13, seventeen minutes before the flight took off. As Respondents concede, there is thus no issue.

**II. Petitioner's Parole Status**

Respondents next claim that Petitioner's parole was terminated on April 24, 2026. Petitioner disputes this, noting that certain procedures must be followed to terminate parole. ECF No. 13 at 3–4.

"Immigration parole [pursuant to 8 U.S.C. § 1182(d)(5)(A)] is a discretionary decision to permit a noncitizen to enter or remain temporarily in the United States 'for urgent humanitarian reasons or significant public benefit' without a grant of admission to the country." *Calvary Albuquerque Inc. v. Rubio*, 136 F.4th 1217, 1228 n.7 (10th Cir.), *vacated on denial of reh'g en banc on mootness grounds*, 154 F.4th 1246 (10th Cir. 2025); *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

A grant of parole under § 1182(d)(5)(A) may be terminated in one of two ways. First, parole "shall be automatically terminated without written notice (i) upon the departure from the United States of the [non-citizen], or, (ii) if not departed, at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). Second, parole may be discretionarily terminated "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the [non-citizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). In this latter situation, notice to the non-citizen is required. *Id.*

Respondents have provided documentation showing that on April 21, 2026, U.S. Customs and Border Protection ("CBP") announced that it was terminating the parole of non-citizens who were paroled into the United States pursuant to § 1182(d)(5)(A) after making an appointment at the southwest border through the CBP One app. ECF No. 14-1 at 1. Respondents also provided an

exhibit showcasing that an email was sent to Petitioner on April 25, 2026, explaining the same. ECF No. 14-2.

At oral argument, counsel for Petitioner did not recall ever receiving the email. Counsel for Petitioner also argued that the notice provided by the CBP memorandum announcing the policy change was not constitutionally or statutorily adequate and was arbitrary and capricious.

Petitioner's argument here is best viewed as (1) raising a factual dispute and (2) raising process arguments, rather than as an argument against the actual determination to terminate his parole. Importantly, as Respondents argue, this court likely has no jurisdiction to review the actual discretionary determination to terminate the parole for this group of non-citizens. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.").

Petitioner's process arguments avoid that jurisdictional bar. *See Doe v. Noem*, 817 F. Supp. 3d 27, 42–43 (D. Mass. 2026), *reconsideration denied sub nom. Doe v. Mullin*, No. 1:25-CV-10495-IT, 2026 WL 821960 (D. Mass. Mar. 25, 2026) (finding similar). It also appears that his argument may have some merit. "Supreme Court and Tenth Circuit precedent suggests parole decisions must be individualized, rendering a blanket termination, sent out via mass email to thousands of parolees, invalid." *Mendibaev v. Lyons*, No. 1:25-CV-01308-DHU-GBW, 2026 WL 917457, at *3 (D.N.M. Apr. 4, 2026) (citing *Jean v. Nelson*, 472 U.S. 846, 857 (1985) and *Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992)).

The court ultimately, however, need not reach these questions because, even if Petitioner's parole was terminated in a proper fashion, Petitioner is still entitled to relief. *See Sananes*

*Hernandez v. Leyva*, No. 4:26-cv-00054-DN, 2026 WL 1948965, at *6 (D. Utah July 6, 2026) (finding similarly).

**III. Section 1226, not Section 1225, applies**

The overarching dispute here is whether, once Petitioner's parole was revoked, Petitioner was subject to mandatory detention under § 1225(b)(2)(A) or detention under § 1226(a). This question is in some ways an alternate front for the highly-contested issue relating to whether § 1225(b)(2)(A)'s application was limited to the border or could be applied to non-citizens caught in the interior of the country. *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1240 (10th Cir. 2026); *Villegas Salazar v. Sheriff of Linn County*, No. C26-98-LTS-MAR, 2026 WL 1651508, at *2 (N.D. Iowa June 8, 2026) ("In recent months the interplay between [8 U.S.C.] § 1225(b)(2) and § 1226(a) has become a hotly contested issue, with many cases addressing the question of which aliens qualify for the mandatory detention scheme of § 1225(b)(2) as 'applicant[s] for admission . . . seeking admission.'").

Respondents argue that § 1225(b)(2)(A) governs Petitioner's detention here.[2] First, Respondents contend that Petitioner is an "arriving alien." ECF No. 11 at 3. As they explain, "the term 'arriving alien' means, among other things, an applicant for admission coming or attempting to come into the United States at a port-of-entry." ECF No. 11 at 3 (citing to 8 C.F.R. § 1.2.). They further point to regulations providing that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section [1182(d)(5)(A)] of the Act, and even after any such parole is terminated or revoked." *Id.*

[2] Respondents do not argue that Petitioner is subject to mandatory detention through expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(i). In any case, many courts have found that expedited removal is not applicable to non-citizens who have been paroled, at any time, into the country. *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 297 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026).

Second, Respondents argue that, under the regulations, once parole is terminated, the former parolee is "restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Respondents also point to the statutory language of § 1182(d)(5)(A), which states that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Putting these two arguments together, Respondents maintain that, because Petitioner was first detained pursuant to § 1225(b)(2)(A) as an "arriving alien" when he first entered the country, he is still an "arriving alien" and is subject to the same detention now that his parole has terminated.[3]

On their face, Respondents' arguments may seem persuasive, but upon further inspection, they falter. To start, the court looks at the statutory text. *Duncan v. Walker*, 533 U.S. 167, 172, (2001) ("We begin, as always, with the language of the statute."). Section 1182(d)(5)(A) has two relevant clauses. It states, after parole ends, (1) the non-citizen "shall forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission."

It is uncontested that Petitioner is an applicant for admission. *See* 8 U.S.C. § 1225(a)(1) (defining application for admission); 8 U.S.C. § 1182(d)(5)(A) (stating parole "shall not be

[3] Respondents cite to a decision from another judge in this district who found similarly. ECF No. 11 at 6. In that decision, Judge Allen found that "[t]he fact that Petitioner was not taken into physical custody immediately upon termination of his parole does not change that, upon that termination, he holds the legal status of one who has never effected entry into the country and who is subject to detention under § 1225(b)." ECF No. 11 at 6 (quoting *Uribe Blanco v. Leyva et al*, No. 4:26-cv-00058-AMA (D. Utah June 16, 2026)).

regarded as an admission”). But Respondent’s claim that he is an “arriving alien” is incorrect. Notably, the term “arriving alien” is not used in the mandatory detention provisions of § 1225 (though it is used in certain other portions and headings of § 1225). The court nevertheless considers the “arriving alien” term in its analysis because Respondents’ argument in large part relies on the regulations (though, again, not any statutory definition) stating that an “arriving alien” remains an “arriving alien” after parole.

The court’s analysis here tracks closely with its and the Tenth Circuit’s prior analysis considering the scope of “an applicant for admission . . . seeking admission” for the purposes of § 1225(b)(2)(A). *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026); *Torres v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *5–*6 (D. Utah Mar. 23, 2026). Similar to the word “seeking,” “arriving” is not a defined term within the statute. Looking to its plain meaning, “[t]he words ‘arriving,’ ‘arrival,’ and ‘arrive’ in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, ‘not an interminable . . . status’ that attaches to a noncitizen upon arrival.” *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306–07 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). “Applying the plain meaning of ‘arriving in the United States’ here, there can be no doubt that upon his parole into the interior of the country, [Petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States.” *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025).

As other courts have noted, the statutory context supports this reading as well. Section 1225(b)(1) is titled “Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled.” 8 U.S.C. § 1225(b)(1). “The statute contemplates that those arriving, [i.e.,] those who appear at the border or a port of entry, must be inspected and screened.

The same is not true for those who, like [Petitioner], are already present—termination of parole is not accompanied by any renewed inspection or screening." *Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *6.

As noted, Respondents' focus on the term "arriving alien" is in some ways misplaced. Section 1225(b)(2)(A) does not use the term, and even if that term were specifically employed, the accompanying regulations would not alter the court's analysis. The court "is interpretating a statute, not a regulation." *Id.* at *7; *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024) (stating "courts must exercise independent judgment in determining the meaning of statutory provisions"). Moreover, looking to the actual language of § 1225(b)(2)(A) itself, as the Tenth Circuit did in *Santillan Quiroz*, it does not apply to Petitioner. *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026) ("The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.").

So, what then should the court make of § 1182(d)(5)(A)'s language stating that the non-citizen "shall forthwith return or be returned to the custody from which he was paroled"? 8 U.S.C. § 1182(d)(5)(A). Unlike the regulations, this language does not state that "a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *10; *but see* 8 C.F.R. § 212.5(e)(2)(i) (stating that once parole is terminated, the former parolee is "restored to the status that he or she had at the time of parole"). Instead, the non-citizen returns to the "custody" from which he was paroled.

Courts have explained that custody and detention are distinct concepts, though they may in certain contexts be synonymous. *See Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *10.

For example, in the habeas context, it has long been agreed upon that the custody requirement of § 2241 can be satisfied by other restraints on liberty beyond actual, physical detention. *See Khabazha v. United States Immigr. & Customs Enf't*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025).

The court declines to read custody as used in § 1182(d)(5)(A) to necessarily mean physical detention, especially because the Supreme Court has stated that this section does not "affirmatively authoriz[e] detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). Rather, when a non-citizen's parole status is terminated, he "loses the freedoms associated with parole status and is once again subject to the same constraints on liberty that apply to any [non-citizen] in removal proceedings without parole." *See Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *10–11 (detailing the various freedoms lost when parole status terminates).

Thus, "under Section 1182(d)(5)(A), the day after a [non-citizen]'s parole status is terminated, under the INA that [non-citizen] is in the exact same position they were the day before, except that they no longer have parole status and the freedoms associated with it. The statute does not require the Court to pretend that [Petitioner] was never paroled and permitted to live freely in this country. A [non-citizen] is not reverted by operation of law to status as an arriving alien—they remain a [non-citizen] living in the United States who used to be paroled and must be treated by the INA accordingly." *See id.* at *11.

In addition to that renewed custody, § 1182(d)(5)(A) mandates that Petitioner's case "shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). "Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a [non-citizen] whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal" or

mandatory detention—potential detention under § 1226(a). *Rodriguez-Acurio*, 811 F. Supp. 3d at 302.

Petitioner therefore falls under the ambit of the discretionary detention framework of § 1226(a). After all, holding otherwise would mean that "because [Petitioner] made an appointment at the border and followed a legal process for his entry into the United States, he must be treated with less process than a [non-citizen] who got past the border and was apprehended by border patrol soon after their crossing" or later in the interior. *See Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *12. Those non-citizens receive the benefits of § 1226(a), including potential release on recognizance or custody determination hearings. As a matter of statutory interpretation, "[i]t is far more sensible to understand the termination of parole as resulting in the termination of the benefits that accompany it, and not as resulting in automatic re-detention." *See id.* at *12.

Respondents fall back on the "entry-fiction" doctrine to argue that Petitioner must be mandatorily detained because he is still "at the border." First, they point to the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In that case, the Supreme Court stated that non-citizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139. Respondents also point to *Leng May Ma v. Barber*,[4] 357 U.S. 185 (1958), in which the Supreme Court stated that parole "was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court." 357 U.S. 185, 190 (1958). Finally, they point to the Tenth Circuit's

[4] The Court in *Leng May Ma* was analyzing a prior version of the INA. *Leng May Ma*, 357 U.S. at 186; *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *6 (D. Utah July 6, 2026) (noting similar).

decision in *Sierra Immigration & Naturalization Service*, 258 F.3d 1213 (10th Cir. 2001), in which the Tenth Circuit held that in the case of a non-citizen who had been granted parole and then re-detained, "[a]lthough he has been physically present in the United States for more than twenty years, Sierra is 'legally considered to be detained at the border and hence as never having effected entry into this country.'" 258 F.3d 1213, 1218 (10th Cir. 2001).

However, as other courts have noted, the "precise issue" before the court is not whether the fiction applies to non-citizens on parole, but rather whether it applies to those whose parole has terminated and are present in the United States for some period of time after that termination, like Petitioner. *See, e.g.*, *De La Cruz v. Rhoney*, No. 25-CV-6699-MAV, 2026 WL 891658, at *9 (W.D.N.Y. Apr. 1, 2026) (on appeal). Even the Court in *Leng May Ma* noted that distinction was important. An entry, "irrespective of its legality," separates a noncitizen from those on parole. *Leng May Ma*, 357 U.S. at 187.

"[T]he 'entry fiction' theory cannot apply indefinitely to an individual whose parole has terminated." *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *7 (D. Utah July 6, 2026). The court finds, as have many others, that Petitioner's continued presence in the interior after his parole termination puts him squarely in the orbit of § 1226(a). After all, "[o]nce parole terminates, . . . a noncitizen living in the United States 'is deemed to be unlawfully present in the United States.'" *Imamov v. Jamison*, No. CV 26-2204, 2026 WL 1164682, at *7 (E.D. Pa. Apr. 29, 2026) (citing *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 366–67 (W.D.N.Y. 2025)). "Detention of 'aliens already present in the United States' is governed by § 1226." *Imamov*, No. CV 26-2204, 2026 WL 1164682, at *7 (quoting *Jennings*, 583 U.S. at 303)).

**IV. Due Process**

Petitioner also makes a separate due process argument. He argues that even if subject to

mandatory detention, he was entitled to a pre-deprivation hearing before any detention. ECF No. 13 at 7–8. The court has previously analyzed a similar claim, though the petitioner in that case had been released on recognizance rather than paroled into the country. *See Pena Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *5 (D. Utah Apr. 3, 2026). For the reasons outlined below, the *Mathews v. Eldridge* due process inquiry likewise warrants additional due process protections for Petitioner. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In *Mathews*, the Supreme Court outlined three factors that are relevant to the inquiry: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

First, Petitioner has a substantial protected liberty interest at stake. After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts have accordingly held that "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *see Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) (unpublished) ("It is well-established that 'a liberty interest inherent in the Due Process Clause arises upon an inmate's release [on parole] from confinement,'" quoting *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005)).

Respondents highlight that the Supreme Court's *Thuraissigiam* decision states that "an alien in respondent's position has only those rights regarding admission that Congress has provided

by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). This language does not do much to inch forward Respondents' position. The petitioner in *Thuraissigiam* was apprehended just 25 yards from the border and subject to continued detention. *Id.* at 107; *see Rodriguez-Acurio*, 811 F. Supp. 3d at 314. That context was central to the Court's decision: "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Thuraissigiam*, 591 U.S. at 107. Petitioner here was granted parole and has been in the interior, establishing connections, for some time.

Moreover, Petitioner's claim does not seek greater due process protections regarding *admission*, which was at issue in *Thuraissigiam*. Instead, Petitioner is asserting a due process liberty interest in "freedom from continued physical detention without any individualized determination that continued confinement is necessary to ensure his appearance at future proceedings or to protect the community." *Ali X v. Bondi*, No. 26-CV-01367-STV, 2026 WL 1857825, at *4 (D. Colo. June 29, 2026); *Mendibaev v. Lyons*, No. 1:25-CV-01308-DHU-GBW, 2026 WL 917457, at *5 (D.N.M. Apr. 4, 2026) ("Some district courts grappling with similar facts have more narrowly read *Thuraissigiam* as protecting Congress's 'sovereign prerogative' over admission and exclusion and limiting noncitizens' due process rights regarding admission, not necessarily regarding pre-removal detention."). In other words, the right to remain free once released. *Rodriguez-Acurio*, 811 F. Supp. 3d at 315.

Nor does the Tenth Circuit's ruling in *Sierra* hamper Petitioner's claim. As other courts in this circuit have noted, "*Sierra*'s holding is properly understood as addressing whether an arriving noncitizen possesses a constitutional liberty interest in parole itself." *Ali X*, No. 26-CV-01367-

STV, 2026 WL 1857825, at *4. As Respondents conceded during oral argument, Petitioner's "circumstances do not involve the denial or revocation of a prospective parole determination based on his criminal history." *Sananes Hernandez*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *11. Again, Petitioner's argument pertains to his liberty interest in remaining free from detention. "That distinction is significant. A claim to admission or parole implicates Congress's plenary authority over the Nation's borders. A claim challenging prolonged physical confinement, by contrast, implicates one of the most fundamental liberty interests protected by the Due Process Clause." *Ali X*, No. 26-CV-01367-STV, 2026 WL 1857825, at *5 (citations omitted).

Second, there is a significant risk of erroneous deprivation of that liberty interest here. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio*, 811 F. Supp. 3d at 317. Respondents concede that, because they view Petitioner as subject to mandatory detention, they did not exercise any discretion as envisioned under § 1226(a) in determining whether Petitioner was a flight risk or danger to the community. Admittedly, Petitioner now has a misdemeanor conviction for a DUI. However, without Respondents actually considering that conviction in an individualized determination, there is a significant risk that Petitioner is detained erroneously.

Finally, the court does not find that a pre-deprivation hearing would impose a costly burden on the government or unduly interfere with the government's interests in enforcing immigration law and protecting the public. Courts across the nation have recently been ordering custody redetermination hearings in the face of the government's deportation push, and these hearings have generally been able to occur within seven days of those orders. There is no risk of serious delay. Petitioner would also have been entitled to a custody redetermination hearing in any case under §

1226(a), so requiring that hearing to take place before detention does not increase administrative costs. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). "Indeed, a pre-deprivation hearing could reduce administrative costs by potentially avoiding an erroneous deprivation of liberty, which would save the costs of unnecessary detention." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025). At bottom, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970. A pre-deprivation hearing is warranted.

Because the court finds that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), Petitioner has met his burden. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

**V. Remedy**

Because the court finds that Petitioner's detention is governed by § 1226(a) rather than § 1225(b)(2)(A), immediate release is the appropriate remedy. First, detention under § 1226(a) requires a warrant issued by the Attorney General. 8 U.S.C. § 1226(a). Respondents have not provided any such warrant here. Second, "discretionary detention under the ambit of Section 1226(a) requires the exercise of discretion. Where there is no evidence or argument that such discretion was exercised, detention under that subsection is illegal." *See Qasemi*, 25-CV-10029 (LJL), 2025 WL 3654098, at *13. When the initial instance of detention is illegal, a custody re-determination hearing fails to address the actual constitutional injury. *See Sananes Hernandez*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *10 ("[H]is detention was unlawful at its inception and it remains unlawful."). Immediate release is warranted.

The court thus orders that Respondents release Petitioner, and if they seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[5]

**CONCLUSION AND ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. Mr. Rodriguez's petition for a writ of habeas corpus is GRANTED. ECF No. 1.
2. Respondents are ORDERED to either immediately release Mr. Rodriguez or to release Mr. Rodriguez in Salt Lake City as soon as practical and without undue delay, based on Mr. Rodriguez's preference. If applicable, Respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Mr. Rodriguez's release within 24 hours of the release.
3. Respondents are ORDERED, at the time of release, to provide Mr. Rodriguez any personal effects and identification documents that were confiscated from him.
4. Respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Mr. Rodriguez prior to his 2026 ICE detention, unless those restraints are determined to be necessary at a future pre-

[5] In its recent decision in *Santillan Quiroz v. Mullin*, the Tenth Circuit cited approvingly to a District of New Mexico decision, *Requejo Roman v. Castro*, when ordering the Government to provide either a bond hearing to the petitioner within seven days or release. No. 26-6019, 2026 WL 1876709, at *17 n.13 (10th Cir. June 30, 2026) (citing to *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1285 (D.N.M. 2026)). The district court in *Requejo Roman* had ordered that the Government shall bear the burden of proving, by clear and convincing evidence, that the petitioner was a flight risk or danger to the community. *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1285 (D.N.M. 2026).

deprivation or custody hearing. Mr. Rodriguez must be released to the same legal status and conditions he enjoyed prior.

5. If Respondents seek to re-detain Mr. Rodriguez, absent exigent circumstances, they must provide Mr. Rodriguez notice of at least seven days before a pre-deprivation hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Mr. Rodriguez is a flight risk or danger to the community. Respondents are ENJOINED from re-detaining Mr. Rodriguez on the basis that he is subject to detention under 8 U.S.C. § 1225(b)(2).

DATED this 24th day of August, 2026.

BY THE COURT:

Jill N. Parrish
United States Chief District Judge